UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE ESTATE OF DANIEL EVERETT, by and
through its Personal Representative WENDY
EVERETT, WENDY EVERETT, an individual,
and WENDY EVERETT, on behalf of and as
natural guardian of JANE DOE,

     Plaintiffs,

v.                                            Case No.:

UNDER ARMOUR, INC., a business entity,
UNDER ARMOUR RETAIL OF FLORIDA,
LLC, a Florida limited liability company, and
SHELDON WRIGHT, an individual,

     Defendants.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Under Armour,

Inc. (hereinafter "Defendant UAI"), by and through its undersigned attorneys,

hereby gives notice that the civil action currently pending in the Circuit Court for

the Ninth Judicial Circuit, Orange County, Florida, identified as *The Estate of Daniel*

*Everett, by and through its Personal Representative Wendy Everett, Wendy Everett,*

*an individual, and Wendy Everett, on behalf of and as natural guardian of Jane Doe*

*v. Under Armour, Inc., Under Armour Retail of Florida, LLC and Sheldon Wright*,

Case No. 2022-CA-001115-O, is removed to this Court without waiving any rights

to which Defendant UAI may be entitled, and says:

Pursuant to 28 U.S.C. §1446(a), Middle District Local Rule 1.06(b), and the CM/ECF procedures for civil case opening, copies of all record documents, including all orders, pleadings, and process which have to date been served upon Defendant are attached as Exhibits A-C.

The Complaint in the above action was filed in the Circuit Court for the Ninth Judicial Circuit on or about February 7, 2022, and served on Defendant UAI and Defendant Under Armour Retail of Florida, LLC (hereinafter "UAR") on May 16, 2022.  In compliance with 28 U.S.C. §1446(b), this Notice of Removal is timely filed within thirty (30) days of Defendant UAI ascertaining that this case is removable.

## I.      DIVERSITY OF CITIZENSHIP

This controversy is between citizens of different states. Specifically, the facts supporting diversity of citizenship are as follows:

### A. Plaintiffs

Plaintiffs Wendy Everett and minor Jane Doe ("Everett" and "Doe") live in and are citizens of Orange County, Florida.  Upon information and belief, Plaintiffs Wendy Everett and minor Jane Doe are domiciled in the State of Florida for purposes of this Court's diversity jurisdiction.  The Estate of Daniel Everett ("The Estate") is a citizen of the State of Florida as the decedent Daniel Everett was a citizen of the

State of Florida.[1]  Upon information and belief, decedent Daniel Everett was domiciled in the State of Florida.  See Plaintiffs' Complaint, ¶ 10.

## B. Defendant Under Armour, Inc.

Defendant UAI is incorporated in the State of Maryland with its principal place of business in Baltimore, Maryland.  See Exhibit E, Affidavit of Loren Pearl.  As such, Defendant UAI is not based in Florida nor domiciled in Florida.  As discussed below, Defendants UAR and Sheldon Wright (hereinafter "Wright") are not proper parties to this action as they were fraudulently joined.

## C. Defendants Under Armour Retail of Florida, LLC and Sheldon Wright were Fraudulently Joined to this Action and Therefore their Citizenship is not Considered

This action arose out of Mr. Everett's employment with UAI.  On the day Mr. Everett was terminated from his employment with UAI, he inexplicably returned to the store and murdered one of his assistant managers.  Mr. Everett then drove to a town approximately 150 miles away and committed suicide.  Mr. Everett's wife, his estate and his minor daughter have brought this lawsuit against UAI alleging employment discrimination, negligent infliction of emotional distress, Death Act claim, Survival Act claim, and Outrage.  Essentially, Plaintiffs allege that UAI failed to prevent discrimination against Mr. Everett, and to offer him the Employee

---

[1] "Where an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and [he] is deemed to be a citizen of the state in which [he] was domiciled at the time of [his] death."  *King v. Cessna Aircarft Co.*, 505 F.3d 1160, 1170 (11th Cir. 2007).

Assistance Program (EAP) at the time of his termination.

In addition, Plaintiffs have joined UAR and Wright to this lawsuit. The claims against these Defendants are wholly without merit as a matter of law, and it is clear that UAR and Wright were fraudulently joined solely in an attempt to defeat diversity jurisdiction, and therefore their citizenship must be disregarded by the Court for purpose of determining jurisdiction.

The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity. *Jackson v. Bank of America, NA*, 578 F. App'x 856, 858 (11th Cir. 2014) (citation omitted). In this case, UAR and Wright have been fraudulently joined by Plaintiffs to defeat otherwise valid diversity jurisdiction. Under the fraudulent joinder doctrine, the court may discount allegations against a non-diverse party where the defendant can show either that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citation omitted). If either factor is present, the resident defendant has been fraudulently joined and must be ignored for jurisdictional purposes. *Id.* "The potential for legal liability [against the Individual Defendants] must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (citation omitted). Although

a court should view factual allegations in the light most favorable to the plaintiff, factual controversies should be resolved in the plaintiff's favor only when there is some question of fact. *Id*. at 1323; *Siciliano v. Target Corp.*, No. 14-CV-80459, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014). When a defendant presents an undisputed affidavit, "the court cannot resolve the facts in the Plaintiff's favor based solely on the unsupported allegations in the Plaintiff's complaint." *Legg*, 428 F.3d at 1323.

As explained below, even if the allegations against UAR and Wright were somehow true (which they are not), they are wholly insufficient to state a cause of action for any of the claims alleged. Thus, there can be no reasonable explanation for Plaintiffs' "claims" against UAR and Wright other than to defeat otherwise valid diversity jurisdiction. *See, e.g., Bordenkircher v. American Home Products, et. al.*, No. 5:03-CV-443-OC10GRJ, 2004 WL 6066924, at *13-14 (M.D. Fla. Jan. 26, 2004) (finding fraudulent joinder where the plaintiffs could not have stated a claim for intentional infliction of emotional distress); *Accordino v. Wal-Mart Stores East, L.P.*, No. 3:05-CV-761J32, 2005 WL 3336503, at * 2 (M.D. Fla. Dec. 8, 2005) (finding fraudulent joinder where there was "no possibility" that the plaintiff could recover against corporate defendant's manager who was improperly joined as an individual defendant).

It is worth noting that this case is remarkably similar to *Estate of Samuel I.*

*Roig v. United Parcel Service, Inc.*, Case No. 20-cv-60811, 2020 WL 6875790 (S.D. Fla. September 30, 2020).  In that case, the plaintiffs brought similar claims against a deceased employee's employer and managers.  The defendants removed the case to federal court, arguing that the joinder of the individual defendants was fraudulent as the claims against the individual defendants were without merit and brought simply in an effort to avoid removal.  The court dismissed Plaintiffs' motion to remand.  This case is significant not only because the factual and legal claims are similar to the claims in the instant matter, but because plaintiffs in *Estate of Roig* were represented by the same counsel as Plaintiffs in this case.  An additional case brought by Plaintiffs' counsel where the fraudulent removal doctrine was applied is *Lett v. Wells Fargo Bank, N.A.*, 233 F.Supp.3d 1330 (S.D. Fla. 2017).

### 1. <u>Plaintiffs cannot state a claim against UAR in Count I</u>

In Count I, Plaintiffs bring a claim under the Florida Civil Rights Act ("FCRA") against UAR.  UAR is not liable under the FCRA as a matter of law because it was not Mr. Everett's employer.  An "employer" under the FCRA is defined as "any person employing 15 or more employees…" Fla. Stat. 760.02(7).  Plaintiffs have not plead any facts to establish that UAR was even an employer under the FCRA, much less Mr. Wright's employer.  In fact, UAR is merely the legal entity that leases the properties for Under Armour stores in Florida.  (Aff. Pearl, ¶6).  It does not have any employees, and did not employ Mr. Everett or Defendant Wright.

(Aff. Pearl, ¶6).  Because UAR is not an employer under the FCRA, Plaintiffs' claim against UAR is frivolous.

Plaintiffs cannot save its FCRA claim against UAR by making a conclusory allegation that UAR and UAI are "joint employers."  "Courts consider several factors in determining whether a joint employment relationship exists: '(1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) the ownership of the facilities where the work occurs; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities.'" *Harapeti v. CBS Television Stations, Inc.*, 2021 WL 388126, *3 (S.D. Fla. 2021) (citing *Quezada v. Sante Shipping Lines, Inc.*, 2013 WL 1334516, at *7 (S.D. Fla. Mar. 29, 2013)).  The Complaint does not contain any facts speaking to any of the elements necessary to establish joint employment.  The attached Affidavit of Pearl, on the other hand, conclusively establishes that UAR did not control the employment of Mr. Wright or Mr. Everett, did not establish the rate of pay for Mr. Wright or Mr. Everett, did not control the conditions of employment of Mr. Wright or Mr. Everett, and that Mr. Wright and Mr. Everett did not perform a "line job integral to the end product" of

UAR. (Aff. Pearl, ¶5-7).   Based on these facts, it is clear that Plaintiffs cannot establish that UAR and UAI are joint employers.   Accordingly, because UAR was not an employer under the FCRA, much less Mr. Everett's employer, the FCRA claim against UAR in Count I is frivolous.

### 2. **Plaintiffs cannot state a claim in Counts II and V for Negligent Infliction of Emotional Distress against UAR or Wright**

In Counts II and V, Plaintiffs allege that all three Defendants were negligent in permitting Mr. Everett to be discriminated against, terminating his employment and blocking his use of the Employee Assistance Program ("EAP").   (Compl. ¶136, 138).   In order to sustain a claim of negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff's damages. *See Curd v. Mosaic Fertilizer, L.L.C.*, 39 So.3d 1216, 1227 (Fla. 2010).   Absent a duty, a claim for negligence fails. *See Francis v. Sch. Bd. of Palm Beach County*, 29 So.3d 441 (Fla. 4th DCA 2010).

In this case, Plaintiffs fail to identify any cognizable duty that either UAR or Wright allegedly owed to each individual plaintiff.   It is unclear what specific acts Plaintiffs claim were taken or should have been taken by UAR or Wright.   Since UAR is simply a leasing company, it is clear that there are no facts Plaintiffs can allege to establish any such duty or negligence on the part of UAR.   Since Wright was simply Mr. Everett's manager, it is clear that Plaintiffs' claim against him is similarly baseless.

To the extent that Plaintiffs are alleging that the duty owed to Mr. Everett was the duty to maintain a workplace free of discrimination, it is well-settled under Florida law that there is not a common law duty to prevent discrimination in the workplace.  Florida does not recognize a claim for negligent failure to maintain a workplace free of discrimination. *See Ayubo v. City of Edgewater*, No. 6:08-CV-1197ORL31GJK, 2009 WL 113381, at *3 (M.D. Fla. Jan. 16, 2009); *Castleberry v. Edward M. Chadbourne, Inc.,* 810 So.2d 1028 (Fla. 1st DCA 2002); *Scelta v. Delicatessen Support Serv. Inc.,* 57 F.Supp.2d 1327 (M.D.Fla.1999).  As such, Plaintiffs cannot, as a matter of law, prove a duty owed to Mr. Everett or any of the Plaintiffs based on the alleged failure to maintain a workplace free of discrimination. To the extent that the alleged duty was to provide EAP help to Plaintiffs or refer Mr. Everett's family members to EAP, this claim is simply without merit. Neither UAR nor Wright operated or offered an EAP, (Aff. Pearl, ¶7), and certainly did not have a duty to refer Mr. Everett or his family to any EAP offered by UAI.  Accordingly, Plaintiffs cannot establish that they were owed any duty by UAR or Wright.

Even if there was such a duty owed by UAR or Wright, the Complaint still fails as a matter of law because there are no allegations in the Complaint which plead that Mr. Everett's suicide was foreseeable based on the alleged actions by UAR or Wright.  Indeed, the repeated assertions in Plaintiffs' Complaint that Mr. Everett had been "a peaceable and loving man his entire life" and had never "previously engaged

in an act of violence" clearly contradict any assertion that there was any reason that UAR or Wright was on notice that it was foreseeable that Mr. Everett would commit suicide. (Compl. ¶¶ 82-84). Furthermore, the general rule is that suicide is not foreseeable but rather a "deliberate intervening act." *Kreig v. Massey*, 781 P.2D 277, 279 (1989); *see also Estate of Jenkins v. Recchi Am.*, 658 S.2d 157, 159 (Fla. 1st DCA 1995).

Next, to state a claim for NIED under Florida law, a plaintiff must also demonstrate that the impact rule has been satisfied. Under the impact rule, Plaintiffs must either demonstrate that they have suffered a physical impact that has caused their emotional distress, or, when a physical impact is lacking, show that the mental distress stemming from the allegedly negligent conduct manifested itself physically. *See Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). Florida courts routinely dismiss negligent infliction of emotional distress claims for failure to satisfy the impact rule. *See, e.g., Doe v. Sinrod*, 117 So. 3d 786, 789 (Fla. 4th DCA 2013) (parents' NIED claim did not survive impact rule where parents did not, and could not "allege that they suffered an impact from an external force."); *see also St. Joseph's Hosp. v. Cowart*, 891 So. 2d 1039, 1043 (Fla. 2d DCA 2004) ("To the extent that both the [plaintiffs] were distressed by the hospital's staff conduct or words, these actions were not accompanied by an impact. As such, [the NIED claim] is barred by the impact rule.").

Here, Plaintiffs' NIED claims against UAR and Wright are barred by the impact rule. The Complaint is completely devoid of any allegation that UAR or Wright physically impacted Plaintiffs in any manner. Plaintiffs' allegations that Mr. Everett was distressed by the "words Defendant Wright spoke to him and the gunshot wound," (Compl. ¶121), are insufficient. These alleged statements were not accompanied by an impact. *See St. Joseph's Hosp.*, 891 So. 2d at 1043.  Likewise, the gunshot wound was self-inflicted and not an impact caused by an external force.

Similarly, the Individual Plaintiffs allege that the physical impact they suffered occurred sometime after Mr. Everett's death, presumably in connection with identifying his body. (Compl. ¶139). Their failure to allege a physical impact is fatal to their NIED claim. So too is the Individual Plaintiffs' failure to allege that they "were involved in some way in the event causing the [alleged] negligent injury" to the decedent. *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995) (reaffirming that a requisite element for a NIED claim is that "the plaintiff must be involved in some way in the event causing the negligent injury to another"). Because Plaintiffs cannot satisfy the impact rule, Plaintiffs have no possible reasonable expectation of sustaining a NIED claim against UAR and Wright. Accordingly, this Court should find that UAR and Wright were fraudulently joined.

### 3. Plaintiffs cannot state a claim in Counts III and IV for Wrongful Death against UAR and Wright

There is no reasonable possibility that Plaintiff Estate can establish a wrongful

death claim under the Wrongful Death Act (Count III) or the Survival Act (Count IV) against UAR or Wright. Plaintiffs allege that Defendants "negligently" caused Mr. Everett's death. (Compl. ¶125, 131). Like the NIED claims, this claim against UAR and Wright fails because Plaintiff Estate does not identify any cognizable duty that UAR and Wright allegedly owed Mr. Everett. Absent a duty, Plaintiff Estate cannot maintain its claim for wrongful death.

Under Florida law, the alleged negligent conduct by UAR and Wright must be the proximate cause of the decedent's death for Plaintiff Estate to recover. *See Clay Elec. Coop., Inc. v. Johnson,* 873 So. 2d 1182, 1185 (Fla. 2003) (listing as an element of a cause of action based on negligence "[a] reasonably close causal connection between the conduct and the resulting injury"). In *McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla. 1992), the Supreme Court of Florida explained that foreseeability is crucial to evaluating proximate cause and the absence of foreseeability can foreclose liability. Specifically, the Court stated:

> [W]e have said that harm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question. In other words, human experience teaches that the same harm can be expected to recur if the same act or omission is repeated in a similar context....On the other hand, an injury caused by a freakish and improbable chain of events would not be "proximate" precisely because it is unquestionably unforeseeable, even where the injury may have arisen from a zone of risk. The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience.

*Id.* at 503. This is a question for the court 'when facts are unequivocal, such as where

the evidence supports no more than a single reasonable inference.'" *Palma*, 347 F. App'x at 28 (citations omitted).

In this case, the cause-in-fact of Mr. Everett's death was suicide. (Compl. ¶23). There is no reasonable causal connection to be made between Wright allegedly discriminating against Mr. Everett, and Mr. Everett's suicide. In the Complaint, Plaintiffs allege that Defendants "knew [Mr. Everett] was dying and in serious need of medical assistance" (Compl. ¶126); given that Mr. Everett committed suicide, it is unclear what this allegations refers to or if it is even supposed to be included in the Complaint. Nonetheless, this allegation does not raise a causal connection between Wright and UAR, and Mr. Everett's suicide.

Even if UAR or Wright were negligent (which they were not), Mr. Everett's death was not – as a matter of law – a reasonable, foreseeable consequence of the alleged negligence. Indeed, the repeated assertions in Plaintiffs' Complaint that Mr. Everett had been "a peaceable and loving man his entire life" and had never "previously engaged in an act of violence" clearly contradict any assertion that there was any reason that UAR or Wright were on notice that it was foreseeable that Mr. Everett would commit suicide. (Compl. ¶¶ 82-84). "Where an action is brought under a wrongful death statute the general rule is that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable" in an

action "brought under a wrongful death statute." *Watson v. Adams*, 2015 U.S. Dist. LEXIS 41172, *16-18; 2015 WL 1486869 (U.S. Dist Court. S.C. 2015) *citing* 11 A.L.R. 2d 751 (Originally published in 1950). Most jurisdictions, including Florida, follow a formulation of this general rule. *See, e.g., Estate of Jenkins v. Recchi Am.,* 658 So. 2d 157, 159 (Fla. 1st DCA 1995); *Krieg v. Massey*, 239 Mont. 469, 472, 781 P.2d 277, 279 (1989) ("The general rule . . . in the area of civil liability for suicide is that negligence actions for the suicide of another will generally not lie since the act or suicide is considered a deliberate intervening act exonerating the defendant from legal responsibility."); *Gilmore v. Shell Oil Co*., 613 So. 2d 1272, 1278 (Ala. 1993) ("Generally, a decedent's suicide is considered an unforeseeable intervening act between the defendants' conduct and the decedent's death."); *Johnson v. Wal-Mart Stores, Inc*., 588 F.3d 439, 443 (7th Cir. 2009) (The "traditional rule describe[es] suicides as intervening acts that break the causal chain because of their presumptively unforeseeable nature. Most other jurisdictions utilize the same approach."). Indeed, the rule cited above is "practically unanimous." 11 A.L.R. 2d 751 (Originally published in 1950).

Additionally, even if Plaintiff Estate pled sufficient facts to state a claim for wrongful death, which it cannot, any such claims against UAR and Wright are barred by the Florida Workers' Compensation Act. Workers' compensation is the exclusive remedy for "accidental injury or death arising out of work performed in the course

and the scope of employment." §440.09(1), Fla. Stat.; *Turner v. PCR, Inc.*, 754 So. 2d 683, 686 (Fla. 2000). The workers' compensation exclusivity bar also applies to conduct alleged to constitute an intentional tort, such as assault and battery, and negligence. *See Locke v. Suntrust Bank*, 484 F.3d 1343, 1350 (11th Cir. 2007). In the Complaint, Plaintiffs repeatedly allege that the actions which allegedly caused Mr. Everett to commit suicide occurred at work – namely the alleged discrimination and his termination. Plaintiffs' claims against UAR are based on the allegation that UAR was Mr. Everett's employer. As such, the claim against UAR is barred by workers' compensation immunity.

"The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter." § 440.11 (1)(b), Fla. Stat. Thus, the same immunity provisions enjoyed by the decedent's employer also apply to individual employees such as Wright, who in the course and scope of their duties acting in their managerial capacities allegedly caused the decedent's injury. *Kennedy v. Moree*, 650 So.2d 1102 (Fla. 4th DCA 1995). Thus, Plaintiff Estate's exclusive remedy against Wright for its alleged injuries is workers' compensation.

Finally, Plaintiffs' claims against UAR and Wright clearly stem from the claims against UAI. As the Court noted in *Wilson v. Target Corp.*, No. 10-804510-

CIV, 2010 WL 3632794, at *5 (S.D. Fla. Sept. 14, 2010), "there is no legitimate reason, other than to defeat jurisdiction, to add an employee of a fully solvent defendant as a party when the employer will be legally responsible for the acts of its agent." Therefore, this Court should find that UAR and Wright have been fraudulently joined.

**4.  Plaintiffs cannot state a claim for Outrage in Count VI against UAR and Wright**

There is no reasonable possibility that Plaintiffs can prevail on a claim for outrage.  The tort of outrage is more commonly referred to as intentional infliction of emotional distress. *See Food Lion, Inc. v. Clifford*, 629 So. 2d 201, 202 (Fla. 5th DCA 1993). In order to state a claim for intentional infliction of emotional distress, a claimant must allege, *inter alia*, that the defendant's conduct was so outrageous "as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized society." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 954-55 (Fla. 3d DCA 2017). Whether alleged conduct is sufficiently "outrageous" is a question of law for the Court to decide.  *See e.g. Bakar v. Bryant*, 2013 WL 55334235 (S.D. Fla. Oct. 7, 2013).

Plaintiffs must meet an "extremely high standard" to establish the alleged conduct is sufficiently outrageous to establish an [intentional infliction of emotional distress] claim." *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012); *see also Ermini v. Scott*, 249 F. Supp. 3d 1253, 1278 (M.D. Fla. 2017).

Accordingly, courts have dismissed outrage/IIED claims arising from alleged workplace discrimination involving more shocking allegations of harassment and discrimination than alleged in this case.[2]

For example, in *Williams v. Worldwide Flight Svcs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004), the court affirmed the dismissal of an IIED claim where an African American employee was allegedly subjected to frequent racial epithets and racially-charged name-calling, persistent threats of job termination and the falsification of disciplinary records, false criminal accusations, and a potentially dangerous work environment by being forced to unload aircraft in dangerous weather conditions and on occasions so as to eliminate plaintiff's break times. *Id.* at 870. Similarly, in *Ray v. Louz Laboratories, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980), the court dismissed an IIED claim despite African American plaintiff's allegations that she was threatened with termination and subjected to "humiliating language, vicious verbal attacks, [and] racial epithets." *Id.*; *see also Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573 n. 7 (11th Cir. 1993) (affirming district court's order directing verdict for defendant on IIED claim where African American employee was subjected to disparate treatment, intimidation and harassment which included the placement of nooses at the employee's work station, and the alleged

---

[2] While the murder of a coworker by Mr. Everett is undoubtedly horrific, any outrageous allegations in the Complaint relate to the heinous actions of Mr. Everett, not any of the defendants.

intentional transport of the employee to the wrong hospital after her work environment caused her to have a nervous breakdown on the job); *see also Freese v. Wuesthoff Health System, Inc.*, Case No. 6:06-cv-175, 2006 WL 1382111 (M.D. Fla. May 16, 2006) (finding plaintiff's allegations of discrimination and harassment did "***not even approach*** the required threshold of conduct…").

Here, Plaintiffs' claim of outrage remains based on the set of facts alleged in Paragraphs 1-112 of the Complaint—the same set of facts in which the claims of discrimination/retaliation under the FCRA are based. Simply stated, nothing in Plaintiffs' Complaint alleges the type of conduct necessary to establish the tort of "outrage." Plaintiffs invite the Court to issue a decision that would subject every company to a suit for IIED simply because the employee characterizes their termination from employment as motivated by discriminatory animus. As the Third DCA noted in *Williams*: "[There are a] number of state and federal remedies available to individuals who claim that they have been discriminated against in the workplace . . . "—*i.e.* the Florida Civil Rights Act and Title VII. *See Williams* 877 So. 2d at 871; *see also Lett v. Wells Fargo Bank*, Case. No. 14-civ-60434 (S.D. Fla. May 9, 2014) (dismissing IIED claim based on terminated employee's claim of age discrimination, noting that the discrimination "does not present even the possibility that it amounts to outrageous behavior under Florida law"). Accordingly, it is clear Plaintiffs' Outrage claim is frivolous.

Because Plaintiffs' claims against UAR and Wright are without merit as a matter of law, and it is clear that Plaintiffs cannot maintain the claims against UAR and Wright, it is clear that these claims were brought solely in an attempt to avoid diversity of citizenship and thwart removal.  Under the fraudulent removal doctrine, the citizenship of UAR and Wright should be disregarded.  Accordingly, there is complete diversity of citizenship between Plaintiffs and Defendant UAI.

## II.    AMOUNT IN CONTROVERSY

The amount in controversy between Plaintiffs and Defendant UAI exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interests and costs.[3]  In determining the amount in controversy, a court is permitted "to make 'reasonable deductions, reasonable inference, or other reasonable extrapolations' from the pleadings."  *Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-62 (11th Cir. 2010)(quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).  Courts may "use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id*. at 1062. The "removing defendant is not required to prove the amount in controversy beyond all reasonable doubt", but rather only by a preponderance of the

---

[3] *See Jirau v. Wathen*, 2014 WL 3695388, at *2 (M.D. Fla.  July 24, 2014) ("If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal") (citing *Williams v. Best Buy* Co., 269 F.3d 1316, 1319 (11th Cir. 2001)).

evidence. *Pretka*, 608 F.3d at 752, 754. Further, in examining this issue, the question is not whether the plaintiff *would actually* recover a specific amount of damages, but rather whether he *could* do so. *See Wineberger v. Racetrac Petroleum, Inc.,* 2015 WL 225760, *3 (M.D. Fla. Jan. 16, 2015) (emphasis added) (citing *McDaniel v. Fifth Third Bank*, 568 Fed Appx. 729, 731 (11th Cir. 2014)). "The appropriate measure is the litigation value of the case assuming that the allegations of the compliant are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. Am. Bankers Ins. Co.*, 976 F.Supp.1450, 1454 (S.D. Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)). "[R]ecent Eleventh Circuit decisions promote a greater reliance on a court's judicial experience and common sense based on the evidence presented and the nature of the claims alleged in determining whether the jurisdictional threshold is reached." *Cowan v. Genesco, Inc.*, 2014 WL 3417656, at *4 (M.D. Fla. July 14, 2014).

In their suit, Plaintiffs are seeking all damages that are allowed in Florida Statute § 768.21. Section 768.21 of the Florida Statutes allows that "all potential beneficiaries of a recovery for wrongful death" may be awarded: (1) the value of future lost support and services; (2) loss of companionship, and mental pain and suffering for both surviving spouse and minor child; and (3) funeral expenses." Plaintiffs have also brought a claim against Defendant UAI under the Florida Civil

Rights Act ("FCRA"). The FCRA permits recovery for back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

At the time of his termination, Mr. Everett was a full-time employee of Defendant UAI earning $85,000.00 annually. (Aff. Pearl, ¶8). Additionally, Mr. Everett provided health and life insurance for his spouse and minor child at a cost of $8,283.60 annually. (Aff. Pearl, ¶8). Mr. Everett was born on February 3, 1974 and was 46 years old at the time of his death. (Aff. Pearl, ¶8). The current retirement age for a person born in 1974 is 67, and, as such, Plaintiffs could realize $1,958,955 for future loss of support and services.

Plaintiffs are also seeking damages for "significant and severe" emotional distress. (Compl. ¶ 25). Even though Plaintiffs seek damages for significant and severe emotional distress, it is nonetheless reasonable for this Court to deduce that Plaintiffs' damages for a "garden variety" claim for emotional pain and suffering could amount to $25,000.00. *See Stone v. Geio General Ins. Co.*, 2009 WL 3720954 (M.D. Fla. Nov. 5, 2009) (explaining that $50,000 is the maximum reasonable recovery for emotional distress when plaintiff relies solely on his own testimony, had not received any psychological testing or medical treatment, and has admitted he is doing better). This amount is reasonable even if Plaintiffs have evidence of emotional distress other than their own testimony. Therefore a reasonable deduction and inference is that even if Plaintiffs do not have evidence supporting this claim for

compensatory damages relating to emotional distress, Plaintiffs could recover up to $25,000 each, which is half of the reasonable amount accepted by courts.

The potential damages under the FCRA are back pay and front pay.  Mr. Everett's employment ended in February 2019.  As of the time of removal, the potential back pay award is $255,000 ($85,000 for three years).  The potential front pay award, which is typically limited to one year, is another $85,000.

In the Complaint, Plaintiffs also allege punitive damages, which should be factored into the amount in controversy in this case.  The FCRA permits punitive damages of up to $100,000, *see* Fla. Stat. 760.11(5), and courts in this Circuit and this District have held that punitive damages may factor in to the amount in controversy for purposes of deciding whether diversity jurisdiction exists.  The Eleventh Circuit recently reiterated that punitive damages may factor into a determination of the jurisdictional amount in diversity cases in *McDaniel v. Fifth Third Bank*, 568 F. App'x 729 (11th Cir. 2014).  In *McDaniel*, the Court wrote that the removing party "need only prove the jurisdictional facts necessary to establish that punitive damages in an amount necessary to reach the jurisdictional minimum are at issue—that is, that such damages *could* be awarded."  Moreover, courts in this District have factored potential awards of punitive damages under the FCRA into the determination of whether the jurisdictional amount has been met.  *See e.g., Penalver v. Northern Elec., Inc.*, 2012 WL 1317621, *3-4 (M.D. Fla. April 17,

2012); *Alshakanbeh v. Food Lion*, 2007 WL 914354, *2-3 (M.D. Fla. Mar. 23, 2007). The Eleventh Circuit has approved the inclusion of punitive damages in these types of cases. *Wineberger v. RaceTrac Petroleum, Inc.*, 672 F.App'x 914, 917 (11th Cir. 2016).

Even a conservative estimate of the amount of punitive damages that Plaintiffs could recover – 40% of the maximum allowable amount of $100,000 – would entitle Plaintiffs to $40,000 and thus well exceed the jurisdictional amount in conjunction with the other damages discussed above. The conclusion that Plaintiffs could be awarded $40,000 in punitive damages is supported by other FCRA cases. *See, e.g.*, *Speedway America LLC v. DuPont*, 933 So. 2d 75, 91 (Fla. 5th DCA 2006) (upholding punitive damages award of $40,000 under FCRA). As explained above, in their Complaint, Plaintiffs allege that Defendant UAI acted in reckless disregard of the law. Although Defendant UAI denies these allegations, for purposes of establishing diversity jurisdiction, Defendant UAI need only show that Plaintiff *could* recover punitive damages.

Furthermore, a removing party may provide the Court with an estimate of a plaintiffs attorney's fees based on defense counsel's experience of the number of hours likely needed to litigate the case and an estimate of the plaintiffs attorney's hourly rate. *Alshakanbeh v. Food Lion, LLC*, No. 3:06CV1094, 2007 WL 917354 (M.D. Fla. March 23, 2007). In this case Defendant's counsel, who is an attorney

with more than 20 years of experience in labor and employment law, estimates that, in her opinion, at least 250 hours will be spent by Plaintiffs' counsel litigating this matter through trial. The hourly rate customarily charged by someone with the experience of Plaintiff's counsel is at least $350 per hour, if not higher. Thus, the attorneys' fees for Plaintiffs will likely exceed $87,500.00 based on the number of hours at a minimum Plaintiff's counsel would likely spend litigating this matter through trial multiplied by the minimum hourly rate customarily charged by someone with counsel's experience.[4]

Based on the allegations in Plaintiffs' Complaint and the nature of their various claims, Defendant UAI has shown that the value of Plaintiffs' claims more likely than not exceeds the jurisdictional amount. Specifically, Plaintiffs' potential damages are $2,426,455.00, summarized as follows:

| | |
|---|---|
| Future lost support and services | $1,958,955.00 |
| Loss of companionship, and mental pain and suffering for both surviving spouse and minor child | $50,000.00 ($25,000.00 for each) |
| Back pay | $255,000.00 |
| Front pay | $85,000.00 |
| Punitive damages | $40,000.00 |
| Attorneys' fees | $87,500.00 |
| **Total damages** | **$2,426,455.00** |

Based on the totality of the circumstances, reasonable estimates, and common

---

[4] Even if the Court only considers the amount of attorney's fees at the time of removal, a reasonable estimation of the time spent meeting with Plaintiffs, filing the charge of discrimination, and drafting the complaint is 20 hours, for a total of $7,000.

sense, the amount Plaintiffs have placed in controversy exceeds $75,000.00.

## III.   CONCLUSION

Because this Court has original jurisdiction over the State Court Action under 28 U.S.C. § 1332 and the requirements for diversity jurisdictions are met, this case is properly removable pursuant to 28 U.S.C. § 1441(a).

Pursuant to 28 U.S.C. § 1446(d), concurrent with the filing and service of this Notice of Removal, Defendant's Notice to Plaintiff of Removal has been served upon counsel for Plaintiffs, Chris Kleppin, The Kleppin Law Firm, P.A., 8751 W. Broward Blvd., Ste. 105, Plantation, FL 33324.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal, along with Defendant's Notice of Removed Action, has been filed with the Clerk of the Circuit Court for the Ninth Judicial Circuit, Orange County, Florida.

WHEREFORE, Defendant UAI requests this action currently pending in the Circuit Court for the Ninth Judicial Circuit, Orange County, Florida be removed to the United States District Court for the Middle District of Florida.

Respectfully submitted on this 6th day of June, 2022.

/s/Angelique Groza Lyons
Angelique Groza Lyons, FBN:  0118801
alyons@constangy.com
Justin O. Scott, FBN 1015628
jscott@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP

100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
Telephone:  (813) 223-7166
Facsimile     (813) 223-2515
Service Email:        tampa@constangy.com
Attorneys for Defendant Under Armour, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of June, 2022, I electronically filed the foregoing document using the CM/ECF System, which will send a notice of electronic filing and an electronic copy of this document to the following:

Chris Kleppin
The Kleppin Law Firm
8751 W. Broward Blvd., Ste. 105
Plantation, FL 33324
ckleppin@gkemploymentlaw.com
assistant@gkemploymentlaw.com
Attorney for Plaintiffs

Shannon L. Kelly
ALLEN NORTH & BLUE, P.A.
1477 West Fairbanks Ave., Ste. 100
Winter Park, FL 32789
skelly@anblaw.com
kmaxon@anblaw.com
Attorney for Defendant Sheldon Wright

/s/Angelique Groza Lyons
Attorney for Defendant