IN THE CIRCUIT COURT, 9TH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

THE ESTATE OF DANIEL EVERETT, by and          CASE NO.:
through its Personal Representative WENDY
EVERETT, WENDY EVERETT, an individual,
and WENDY EVERETT, on behalf of and as natural
guardian of JANE DOE,

      Plaintiffs,

v.

UNDER ARMOUR, INC., a business entity,
UNDER ARMOUR RETAIL OF FLORIDA,
L.L.C., a Florida limited liability company, and
SHELDON WRIGHT, an individual,

      Defendants.

_____/

## **COMPLAINT**

Plaintiffs, The Estate of Daniel Everett, by and through its Personal Representative
Wendy Everett ("The Estate"), Wendy Everett, individually ("Everett"), and Jane Doe ("Doe"),
through their undersigned attorneys, file this Complaint against the Defendants, Under Armour,
Inc. and Under Armour Retail of Florida, L.L.C. (collectively referred to as "the corporate
Defendant") and Sheldon Wright (hereinafter "Defendant Wright", unless noted otherwise), but
the 2 Defendants are collectively referred to as "Defendant"), and allege:

### **JURISDICTION AND VENUE**

1.      This suit is brought by The Estate and the beneficiaries (Everett and Doe) against
all Defendants pursuant to Florida's wrongful death statute (*Florida Statutes* § 768.19 and other
§§ of 768), alternatively, the survival statute (such as § 46.021, other §§ 46 and § 768), and for
the torts of outrage (intentional or reckless infliction of emotional distress), gross negligent
infliction of emotional distress ("GNIED"), and the Estate and Wendy Everett bring claims

against the corporate Defendant pursuant to *Florida Statutes* § 760.01 *et seq.*, (the "Florida Civil Rights Act of 1992" or "FCRA").  The Plaintiffs seek all damages that are allowed in *Florida Statutes* § 768.21.  The Plaintiffs maintain that the Defendants caused the death of Daniel Everett (Wendy Everett's spouse and Jane Doe's father) by wrongful act, negligence, and/or default as more specifically set forth herein.  Inconsistently and/or alternatively, if the Defendants deny that they caused the death of Daniel Everett, and thus the cause of Daniel Everett's death is uncertain or disputed, the Plaintiffs bring a survival action.    The Plaintiffs intend to have both the wrongful death and the survival action claims tried to a jury and before final judgment will elect their remedy (if they are successful on both claims).

2.    Jurisdiction is conferred upon this Court by:

(a)    *Florida Statutes* § 34.01(1)(c)4 (1995) because The Estate, Everett, and Doe are seeking more than $30,000 in damages;

(b)    Additionally, jurisdiction is conferred upon this Court pursuant to Article V, § 20(c)(3) of the Florida Constitution and *Florida Statutes* § 26.012(2)(c) (1995) because equitable relief is sought by The Estate.

3.    Venue is proper for the Circuit Court of Broward County because:

(a)    The corporate Defendants maintain their registered agents in Leon County and is incorporated out of the State of Florida.    Daniel Everett (the decedent/former employee of the corporate Defendant, referred to as "Daniel Everett" or "Mr. Everett") was employed in Florida by the Defendant which at all material times conducted, and continues to conduct, business in every county in the state; venue lies in Leon County, Florida because Under Armour, Inc. is a foreign corporation with its registered agent located there; and

(b)      Additionally, venue lies in Orange County pursuant to *Florida Statutes* §
47.051 because the acts that gave rise to both Everett's, Doe's, and The Estate's claims occurred in
Orange County, Florida, and because Defendant keeps an office for the transaction of its customary
business in Orange County, Florida, and because Defendant Wright resides there; and venue lies in
St. Lucie County because the death occurred there.

### ADMINISTRATIVE EXHAUSTION/CONDITIONS PRECEDENT

4.      The Estate, Everett, and Doe have complied with all the conditions precedent in this
case, or they have been waived.

5.      The Estate timely filed a charge of discrimination against the corporate Defendants
with the Florida Commission on Human Relations ("FCHR") and the Equal Employment
Opportunity Commission on February 9, 2021.  The Fourth District Court of Appeal issued in a
similar case involving the estate of a deceased employee recognizing that there does not need to be
an employment relationship between a "person aggrieved" as set forth in FCRA and the entity
which is the subject of the charge of discrimination, but rather the only requirements are for a
charge of discrimination to be filed on behalf of the aggrieved person and that the aggrieved person
generally be someone in the zone of interests of the FCRA, that is, people as to whom could be
negatively affected by any discriminatory or tortious conduct, such that injury to the individuals
being in the zone of interest is reasonably foreseeable. *Cimino v. American Airlines, Inc.*, 183 So.3d
1242 (Fla. 4th DCA 2016).  The charge of discrimination was also filed on behalf of Wendy Everett
as his surviving spouse, because was in the zone of interest/danger as she was Mr. Everett's
spouse, and was a victim of discrimination, too.

6.      Both corporate Defendants knew of or should have known of the filing of the charge
of discrimination because their corporate relationship (Under Armour, Inc. wholly owns Under

Armour Retail of Florida, L.L.C.) required each other to notify the other of any charge of discrimination that was filed, because they were both employers of Mr. Everett, alternatively, both corporate Defendants jointly employed Mr. Everett and thus both were on notice of his charge of discrimination (they filed a response to it with the FCHR).  In addition to the adequacy of notice that Defendant Under Armour, Inc. gave to Under Armour Retail of Florida, L.L.C., both corporate Defendants have an identity of interest (especially with the employment of Mr. Everett), particularly in light of their corporate affiliation, and thus both entities knew of the charge of discrimination and were on notice to respond to it and/or conciliate.

7.     The FCHR did not enter or issue a "no cause" and dismiss the charge of discrimination within 180 days of the charge being filed.

8.      This Complaint has been filed more than one hundred and eighty (180) days after the Plaintiffs' filing a charge with the FCHR.  The FCHR did not enter a "no cause" determination within 180 days of the charge being filed, and the Complaint is being filed within 1 year of the issuance of any notice of right to sue.

9.     The Estate, Wendy Everett, and Doe have all satisfied all administrative prerequisites for all claims for relief asserted herein and for the Court's assumption of jurisdiction over all claims for relief herein pursuant to FCRA.

## PARTIES

10.     Concerning Plaintiffs, The Estate is duly opened in Orange County Circuit Court (Probate Division) in or about June 2020, and the Personal Representative of The Estate is Everett. Everett is a citizen of the State of Florida, who resides within Orange County, Florida, and who was an employee of the corporate Defendant.  Doe is Everett's only child with Mr. Everett.  The Estate, Doe, and Everett are all citizens of the State of Florida.

11.     Defendant Under Armour, Inc. is a corporation which, at all times material, conducted substantial and continuous business in Orange and St. Lucie County, Florida, and is subject to the laws of the State of Florida, and has a business office and business location in both Orange and St. Lucie County, Florida.

12.     Defendant Under Armour Retail of Florida, L.L.C. f/k/a Under Armour Retail, Inc. is a Florida limited liability corporation which, at all times material, conducted substantial and continuous business in Orange and St. Lucie County, Florida, and is subject to the laws of the State of Florida, and has a business office and business location in both Orange and St. Lucie County, Florida, and is a citizen of the State of Florida because it is a Florida limited liability company.

13.     Defendant Wright is a manager with the corporate Defendant and was at material times, and Defendant Wright resides in Orange County, Florida, and Wright is a citizen of the State of Florida.

14.     The corporate Defendants both employ fifteen (15) or more employees and are both an "employer" within the meaning of the Florida Civil Rights Act of 1992, *Florida Statutes* § 760.02(6-7).

15.     The decedent, Daniel Everett, was, at all times material, an "employee" of the corporate Defendant as defined by *Florida Statutes* § 760.02(5) and Everett and Doe were, at all times material, in the zone of danger and persons aggrieved given the manner in which the Defendants treated Mr. Everett as set forth herein as defined by and contemplated by FCRA.

16.     The Estate can bring claims under the FCRA. The FCRA provides that any "person aggrieved by a violation of [FCRA—*Florida Statutes* § 760.01-.11]" may bring an action against any "employer, employment agency, labor organization, or joint-labor management committee". *Florida Statutes* § 760.11(1). There is no requirement that only a

current employee of the employer can bring an action under the statute. *Florida Statutes §* 760.01(2) (stating, to the contrary, that the FCRA contains a broad pronouncement to remedy *all* discrimination in the State of Florida, as it states that the "general purpose[ of the FCRA is] *to secure for all individuals within the state freedom from discrimination*") (emphasis added). An "employer" is simply defined as "any person employing 15 or more employees . . . and any agent of such a person". *Id.* § 760.02(6-7). There is no requirement that only an employee of the employer can bring an action under the statute. *Id.* § 760.11(1) (stating that "[i]t is an unlawful employment practice for an employer . . . to discharge or fail to hire or refuse to hire *any individual, or otherwise discriminate against any individual* . . .") (emphasis added). The Fourth District Court of Appeal specifically held that an Estate can sue under FCRA, and that children and the spouse of the decedent such as Doe and Everett are all within the zone of interests FCRA was designed to protect and it was reasonably foreseeable that they would be damaged as a result of the terrible discriminatory acts on the part of the Defendants. *See Estate of Michael Cimino v. American Airlines, Inc.*, 183 So. 3d 1242 (Fla. 4th DCA 2016).

17.    The individuals who were employed by the Defendant, as set forth below in detail, were agents of the Defendant and their actions bind the Defendant.

18.    At all times material to this action, the Defendant and certain of its representatives (agents) engaged in unlawful discriminatory and retaliatory practices against Daniel Everett, which were motivated by Mr. Everett's race (black) and marital status to his white wife and numerous complaints of discrimination, were all in violation of the Florida Civil Rights Act of 1992, and the Defendants subjected Doe and Everett to emotional distress in a manner that was grossly negligent and/or reckless. At all times, the actions of the Defendants were taken against Mr. Everett to not only damage and cause him harm but also intentionally to injure and damage Everett and Doe.

## STATEMENT OF FACTS

19.     Mr. Daniel Everett (who was a black man married to a white woman referred to as "Mr. Everett") was an employee of the corporate Defendant (3+ years of service), who was the victim of invidious discrimination and hateful comments by Defendant Wright who was his supervisor for the last few months of his employment, and who was also black, but militantly black and hated Mr. Everett because he was married to a white woman, which Defendant Wright thought was traitorous.

20.     Numerous employees, including managers, and Wright's manager, knew that employees not in mixed-race marriages were treated more favorably than Mr. Everett, including but not limited to the employees and managers knew Wright was harassing and retaliating against, and terminated Mr. Everett, because Mr. Everett was black but married to a white woman.  Mr. Everett informed higher management and human resources to complain about the discrimination, including in the months before his untimely death on February 14, 2020.  At all material times, the Defendants had a duty to the Plaintiffs to refrain from creating an unreasonable risk of harm to them, which duty Defendants breached by subjecting Mr. Everett to abuse, harassment, and bullying in an attempt to cause physical harm to Mr. Everett including his death, which they ultimately successfully accomplished.

21.     Wright, in a pretextual attempt to terminate Mr. Everett, falsely accused him of poor performance, but Wright and the other employees of the Defendants knew that Mr. Everett was performing his job very well.  Wright repeatedly commented that Mr. Everett should divorce his white wife and demanded to know why he would mix races and that same was treasonous to black people and their culture.

22.     Up until the period of time Mr. Everett worked under Mr. Wright, Mr. Everett had a 3+ year history with the corporate Defendants and was not accused of things that Mr. Wright falsely accused Mr. Everett of.  Mr. Everett managed and supervised 2 major construction remodels, and made the corporate Defendants millions of dollars.  Pullano gave Mr. Everett good reviews.  Mr. Everett always properly performed his job with the corporate Defendants.

23.     These horrible, false, outrageous statements and threats made to Mr. Everett caused Mr. Everett to fall into a great depression (which was witnessed by and apparent to many individuals employed by Defendant) and eventually led to the ruination of his career, his despondency and the infliction of severe emotional distress, which led him to commit an act of murder which was totally uncharacteristic of him, and then take his own life on February 14, 2020.

24.     Unfortunately, Everett had to identify and view the dead body which was a traumatizing event, as was learning he murdered a co-worker.  At all times, the Defendants were acting in a manner toward Mr. Everett that made them aware or they should have been aware that it was reasonably foreseeable that Mr. Everett was going to commit and act of violence and die while at work, and the Defendants had a specific duty of care as the employer of Mr. Everett and as operators of their EAP program (Employee Assistance Program) which has as its main duty the protection of employees' and their families mental and physical health to ensure the safety and well-being of Mr. Everett.

25.     As one can imagine, the pain and grief that the entire family is going through, and the emotional distress that they have suffered, is significant and severe.

26.     Mr. Everett was a manager with the corporate Defendants supervised by Christina Pullano for 3 years from whom he received great reviews.

27.     Defendant Wright supervised Mr. Everett for his last few months.

28.     Mr. Everett oversaw many employees in his department.

29.     Mr. Everett received favorable reviews and was well liked by all of his co-workers.

30.     Mr. Everett's personnel file and company records are replete with upper-level management affirmations, excellent reviews and significant praise from his co-workers.

31.     Prior to Wright learning of Mr. Everett's marriage to a white woman, Mr. Everett's record with the corporate Defendants reflected a model employee.

32.     Mr. Everett was employed by the corporate Defendants starting in 2016, and was the General Manager for one of the largest North American Stores.

33.     Mr. Everett's initial direct supervisor was Christina Pullano for 3 years (she was promoted/moved to South Florida), until the fall of 2019, when Defendant Wright was hired as Pullano's replacement.

34.     Mr. Everett worked extremely hard and established himself as one of the fairest Managers over a 25-year history in his professional career.

35.     Thus, working for Ms. Pullano, without incident, was no surprise.

36.     It was only when Defendant Wright was hired did the targeting and gaslighting between he and the managers that worked under Mr. Everett start, and then it quickly escalated fueled by Defendant Wright's hatred of whites and other blacks who were married to whites.

37.     The same managers that the corporate Defendants would have terminated for terminable offenses, were now protected by Defendant Wright, who had an absolute interest in and mission to destroy and terminate Mr. Everett because of his hatred of Mr. Everett being married to a white woman (obsession with racial purity).

38.     After Defendant Wright learned that Mr. Everett was married to a white woman, he made it very clear to Mr. Everett that he would destroy Mr. Everett's life and demanded that Mr. Everett divorce Ms. Everett, and when he refused, he told Mr. Everett that every chance he could he would humiliate Mr. Everett, destroy his career, support the assistant managers and use them to undermine Mr. Everett's job, even though Everett was the general manager, and all, if not most, of the assistant managers and leads were on corrective action for performance issues.

39.     Mr. Everett documented all of these things, including pictures of the store being left in shambles, and evidence of theft, that he was documenting, all of which Defendant Wright ignored.

40.     This evidence is all on Mr. Everett's work laptop and with HR, and back up files that Mr. Everett kept, specifically because of the discrimination targeting proof.

41.     Plaintiff learned that much proof of discrimination that Mr. Everett kept on his own personal laptop for work use was remotely deleted and burned by Defendants.

42.     Defendants also cyber hacked and remotely deleted Mr. Everett's personal Linked-In account the evening of February 10, 2020.

43.     Defendants attempt to sanitize his work laptop, as much as they want, but they cannot  hide the truth, nor will they keep Plaintiffs silent from telling their story and the disgraceful way they treated Mr. Everett because of the color of his skin and his marital status (married to a white woman).

44.     They tried to erase Mr. Everett, like he was garbage, and yet this is the same man who was beloved by so many who knew him, worked for him, and the many that loved him, especially the Plaintiffs.

45.     Mr. Everett did not engage Defendant Wright, when he said to Mr. Everett, "You think you are better than me, because you married to a white woman?  You couldn't marry in your own race?"

46.     However, there were other times that Mr. Everett specifically complained about the race discrimination at the hands of Defendant Wright.

47.     And for Defendants to and try to eliminate their negligence/discrimination is an absolute disgrace, because they have continued supporting the racist Defendant Wright.

48.     A quick look into Defendant Wright's social media, for a potential salaried employee/manager, should have given any major corporation red flags, if HR did their due diligence.

49.     Defendant Wright's Facebook page, was (we use the past tense "was", because Defendants have since removed a lot of the discriminatory and hateful references) screaming with racist posts.

50.     Defendant Wright's Facebook page showed that he is a black militant, and seeks to advance the black race over the white race and that the white race is demonic—it showed absolute hatred to and contempt for the white race, which led to him hating Mr. Everett simply because he was married to a white woman thus ruining his "genetic purity".

51.     After seeing posts like this, the clear picture of someone who was not impartial or fair, but rather racist and discriminatory, should have kept the corporate Defendants looking for a better candidate, but certainly not place Defendant Wright in a position in which he would be supervising whites or blacks married to or dating white.

52.     Unfortunately, not only did the corporate Defendants hire Defendant Wright but also they placed him over whites and blacks married to whites which gave Defendant Wright the

opportunity to discriminate against Mr. Everett which the corporate Defendants allowed to happen and did not stop it although they knew it was occurring.

53.     Defendant wright was allowed by the corporate Defendants to terminate Mr. Everett without any additional documentations from any higher-up manager.

54.     The corporate Defendants are responsible and culpable by allowing Defendant Wright to terminate Mr. Everett without any additional documentation or higher-level manager's input the morning of February 10, 2020.

55.     Mr. Everett's termination required that certain of the corporate Defendants' protocols (policies and procedures) be followed.

56.     The corporate Defendants' policies and procedures required that a Human Resource representative/another executive or manager of the corporate Defendant be present.

57.     However, that did not happen.

58.     Mr. Everett was terminated with only Mr. Everett and Defendant Wright being present in the office (video supports this).

59.     Then, in Mr. Everett's own handwriting, he asked, "What is this that you are talking about?" Mr. Everett asked for a HR representative to get in contact with him, and there is reference to Sharniece Gross from HR who apparently was going to call Mr. Everett back by 10:15 a.m.

60.     The corporate Defendants also violated their policies and procedures by not conducting an "exit interview" with Mr. Everett.

61.     Mr. Everett would have had prior knowledge of performance issues, and full documentation from years of him working for Christina Pullano, as compared with the brief 90 days for Defendant Sheldon Wright.

62.     In fact, the 90 days that Mr. Everett worked under Defendant Wright, was in the absolute busiest season/quarter of the year, and the corporate Defendants have a policy to not act on or engage in any corrective action or "coaching" until the next quarter, and a full performance plan could then be implemented for the next 6-12 months, like Mr. Everett did for the assistant managers who worked under him who were on corrective action plans for terminable offenses.

63.     This constitutes yet another violation of the corporate Defendants' policies and procedures.

64.     Then there is the formal relinquishing of company property, which includes, keys to the store, the company laptop, company credit card, and terminate access to the company portal, because Human Resources would have already been involved and scheduled same.

65.     But, in violation of the corporate Defendants' policies and procedures, that did not happen.

66.     Instead, Defendant Wright and the corporate Defendants violated these policies and procedures, making false allegations, and conspired with managers who were on corrective action plans and likely were going to be terminated for varying reasons, but Defendant Wright did what he set out to do from the first day he learned Mr. Everett was married to  white woman, eliminate Mr. Everett, and continue to humiliate him, like he had done since the corporate Defendants so carelessly and recklessly hired this racist "thing".

67.     Because the applicable policies and procedures were not followed, the corporate Defendants abandoned and discarded Mr. Everett like garbage.

68.     The corporate Defendants did not call him back.

69.     Thus, Mr. Everett was able to access the corporate Defendants' company portal throughout the day to obtain information and provide it to the Plaintiffs.

70.     Mr. Everett also used his company credit card, which he had for over 3 years, and made 1 purchase that day.

71.     Mr. Everett's purchase was for the firearm he used to kill himself.

72.     This was confirmed by Detective Sprague with Orlando Police Department.

73.     Mr. Everett only used it 1 time, and that was to take his life.

74.     Defendants took away Mr. Everett's life, and livelihood to provide for his family.

75.     Mr. Everett and Everett were married 20 years.

76.     The Everetts have a beautiful daughter, who was going to be 16 years old when this tragic event happened.

77.     Mr. Everett was the biggest advocate for fairness and the utilization of company policies and procedures.

78.     Same is demonstrated by the fact that Mr. Everett's utilization of company policy and procedure was consistently challenged by the assistant managers and leads who were under Mr. Everett, when they were held to company standards and the overall cleanliness of the store.

79.     Mr. Everett led by example, and did everything he asked of his employees.

80.     Mr. Everett was a 6 foot 8 black man with a deep voice, and he was discriminated against for just being who he was.

81.     Defendant Wright was deliberately targeting Daniel, for things that are protected in the Code of Conduct and his civil rights.

82.     The emotional distress that Defendant Wright put Mr. Everett through was extreme and severe, so extreme severe it placed Mr. Everett (an otherwise loving and peaceable man) into a murderous rage.

83.     Mr. Everett was a peaceable and loving man his entire life.

84.     Mr. Everett had never previously engaged in an act of violence, however, the severe and extreme emotional distress which culminated in Mr. Everett's termination, placed a loving peaceable man in a situation in which on the day that Mr. Everett was terminated (February 10, 2020), Mr. Everett retrieved a firearm came back into the corporate Defendants' offices and shot and killed a co-worker who was conspiring with Defendant Wright to destroy Mr. Everett's career, when he was looking to shoot Defendant Wright.

85.     Mr. Everett committed suicide somewhere between February 10-14, 2020.

86.     The blame for these tragic events rests solely with the Defendants.

87.     For example, Pullano was at Mr. Everett's funeral crying and visibly shaken and signed the guest registry.

88.     Pullano was upset because she had not been able to stop Defendant Wright's racism from destroying the Everetts.

89.     Stephanie Driskell wrote an Instagram message to Everett after Mr. Everett's death detailing how Mr. Everett was such a wonderful man, great worker, and nice person.

90.     Starting a few months before Mr. Everett was terminated, Defendant Wright made repeated racist and discriminatory statements to Mr. Everett for "marrying outside of his race".

91.     At the time, Wright who is black, was big-time into the black-lives-matter movement, and was making statements that he hates white people and hates black people who are married to white people even more.

92.     Wright had racist posts on his social media accounts, including statements comparing the sentences of black criminal defendants to those of white criminal defendants and excoriating the more lenient sentence given to the white defendant, claiming all of American society is racist against blacks, and urging violent change to endemic racism.

93.     Wright took Black Lives Matter to the extreme and viewed as an enemy any black person who would marry a white person.

94.     Everett complained about the racial discrimination and harassment to the corporate Defendants' and their HR department, but the corporate Defendants did not get back with Everett and return his communications, even though they were supposed to under the policies and procedures.

95.     The corporate Defendants never returned Mr. Everett's calls and emails concerning the discrimination from which he was suffering.

95.5.   The Plaintiffs went to see undersigned because they learned about the case *Cimino v. American Airlines, Inc.*, 183 So.3d 1242 (Fla. 4th DCA 2016) in which he was counsel of record which allowed for an Estate to bring claims on behalf of a suicide in the workplace that resulted from discrimination and the Motion to Dismiss was denied in that case and summary judgment was denied as to the Survival Act claim with similar facts (suicide right after termination by the fired employee).  Undersigned counsel has prevailed on motions to dismiss for GNIED and outrage claims brought by terminated workers many times including the Fourth DCA recently affirmed the denial of a motion to dismiss in a case involving a governmental entity:  *Morton v. 1621 JRA Lauderhill Food Corp.*, 2021 WL 2379425 (Fla.Cir.Ct., June 1, 2021) (Towbin Singer, J.); *Gordon v. ABM Aviation, Inc.*, 2021 WL 2826400 (Fla.Cir.Ct., July 1, 2021) (Towbin Singer, J.); *Stratos v. South Broward Hosp. Dist.*, 2020 WL 6540516 (Fla. Cir. Ct., Nov. 4, 2020) (Rodriguez, J.), *aff'd*, 326 So.3d 702 (Fla. 4th DCA 2021); *Hankerson v. The Tucker Law Group, P.A.*, 2021 WL 3087820 (Fla.Cir.Ct., May 10, 2021) (Bidwill, J.); *Edgecombe v. Lowe's Home Centers, L.L.C., et al.,*. 2020 WL 6051891 (Fla.Cir.Ct.Oct. 3, 2020) (Bowman, J.); *Angulo v. SAP Int'l, Inc., et al.*, 2020 WL 6122362 (Fla.Cir.Ct., Oct. 15, 2020) (Perlman, J.); *Cohen v.*

*Seacrest Servs., et al.*, 2020 WL 6041373 (Fla.Cir.Ct., Oct. 8, 2020) (Haury, J.). These cases all

followed *Kirksey v. Jernigan*, 45 So.2d 188 (Fla. 1950) which provides for GNIED.

96.   Mr. Everett wrote a letter to Plaintiffs before he died (and he was listed as a

current employee and had access to the corporate Defendants intranet computer system the entire

day of February 10, 2020, which set forth the pain Defendants' racism put him through:

To my Beautiful Wife and Friend,

I didn't think this day would come so quick. I know it will be hard for you and for that I'm sorry. They must understand the hurt they caused, and this is the only way I see it can be done. I thought about it for hrs. today at the range, while driving and while I was home. I didn't mention because it hurt so much.

Marcy , Eunice , Eric and Zaira lied and I don't know or understand why??

I want you to know I love you and have been so proud to call you my wife. I remember I wanted to make sure everyone knew as you should only take my last name Everett and shout it to the mountaintop . Even when times was hard, we work it out and made a beautiful life together. Unfortunately, I won't see our daughter graduate, I won't see her walk down the aisle or sign that acceptance letter. I need you to be there for the both of us and remember Ellise is our only daughter, a person you and I created so beautiful and smart. Thank you

LOVE,

DAniel

97.    The fact that Everett was fired for no reason other than his race and his complaints of race discrimination, which led to him suffering such severe emotional distress that he would commit murder and then take his own life is simply beyond human understanding.

98.    Defendants are squarely at fault.

99.    The anguish Everett experienced in his last few weeks of work, especially December 2019 and January and February 2020, contributed to his sudden death.

100.    Everett was called and told about her husband's death and had to identify the body, which was a traumatizing event.

101.    In mid-February 2020, Everett called to inquire and obtain Mr. Everett's final paycheck and was told it had been mailed to Mr. Everett, but that was a lie and Defendants sent it to her via Federal Express days later.

102.    The Defendants terminated Mr. Everett because of his race, marital status, and complaints of discrimination in violation of *Florida Statutes* § 760.01 *et seq.*

103.    This suit is being filed by the personal representative of the Estate of Mr. Everett on behalf of the estate, and is also being filed in Everett's capacity as the surviving spouse of Mr. Everett, and by Doe.

104.    Mr. Everett always performed his job well for the corporate Defendants and thus did not perform it poorly.

105.    Mr. Everett is seeking to recover against the Defendants for the pain and suffering that she endured as a result of the Defendant's discrimination toward Mr. Everett.

106.    Mr. Everett was discriminated against by the Defendants because of his race, marital status, and/or complaints of discrimination, by the corporate Defendants' highest levels of management.

107.    There was and is no legitimate business reason to discriminate against Mr. Everett in the manner in which the Defendants did.

108.    Despite the fact that it became increasingly clear that Mr. Everett was enduring severe emotional distress, and that it became clear without them Mr. Everett would die, Defendant intentionally caused Mr. Everett's death because of Mr. Everett's race and/or marital status and/or complaints of discrimination, and Defendants wrongly caused the death of Mr. Everett alternatively the cause of Mr. Everett's death is uncertain.

109.    The Defendant's actions are in violation of *Florida Statutes* § 760.01 *et seq.* None of the alleged aforementioned actions constitute an accident in the workplace and physical harm Mr. Everett suffered does not constitute a personal injury arising from an accident in workplace.   The injuries to Mr. Everett were not the result of an unexpected or unusual event, but rather were intended by the individual Defendant, and thus vicariously through the agency relation the corporate Defendants.  The Defendants' and the corporate Defendant's agents' actions constitute the infliction of emotional distress grossly negligently/recklessly/intentionally under such circumstances that a reasonably prudent person would characterize them as outrageous, and the torts arose from an act constituting race and/or marital status discrimination/retaliation which is a scenario involving an injury to intangible personal rights.  Defendants' actors were acting in such a way as to believe they were benefiting the corporate Defendant by their actions, and their conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendants, that the corporate Defendants knew or should have known of the conduct.  The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent Defendants actors' conduct.  Consequently, the corporate Defendants are vicariously responsible for the conduct of their agents.  Everett's real estate career has been damaged because of the reasonably foreseeable

manner in which Mr. Everett's career and life ended with the Defendants, which is the Defendants' fault.

110.    Everett, The Estate, and Doe Sam have retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay counsel a reasonable fee for their services.

111.    Defendants embarked down a path of actions that they knew or should have known were highly likely to cause Mr. Everett's death, and such actions were reckless, alternatively, willful, wanton, and malicious.  The police reports concerning the death of Mr. Everertt and the murder he committed all note that he was middle-aged and had no violent tendencies and that the discrimination at work and termination caused the murder and suicide.

112.    Everett, The Estate, and Doe are entitled to their reasonable attorneys' fees if they are the prevailing party(s) in this action.

**COUNT I**

**VIOLATION OF FCRA – TERMINATION/DEATH CLAIM**

113.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 112 as though fully set forth.  This Count is brought only against the corporate Defendants and is brought by The Estate.

114.    Defendant discriminated against Mr. Everett with respect to his employment by allowing Mr. Everett's race and/or marital status and/or complaints of discrimination to be the cause of his termination and death since they were the motivating factor for both.

115.    Defendant's actions violate the Florida Civil Rights Act of 1992, and specifically *Florida Statutes* § 760.10, by causing Mr. Everett's termination and death, by allowing his race

and/or marital status and/or protected activities to be a cause of his death by allowing same to motivate Defendants.

116.    As a direct and proximate result of the intentional and premeditated violation of the Florida Civil Rights Act by the Defendant with respect to its causing his termination and death of him, by discriminating against him by allowing his race and/or marital status and/or retaliating against him because of protected activities to be a motivating factor, The Estate has been damaged.

117.    The Estate's damages include loss of work, humiliation, emotional pain, distress, depression, inconvenience, loss of his self-esteem, loss of dignity, loss of enjoyment of life, loss of back pay, loss of front pay, loss of bonuses, fringe and retirement benefits, lost future earnings capacity, and punitive damages.

WHEREFORE, as to Count I, The Estate respectfully requests that this Court:

(a)    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)    Order Defendant to make The Estate whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)    Order Defendant to make The Estate whole by providing compensation for future pecuniary losses, including front pay, in amounts to be proven at trial.

(d)    Order Defendant to make The Estate whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)     Order Defendant to pay The Estate punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(f)     Order Defendant to make The Estate whole by compensating it for lost future earnings capacity.

(g)     Award The Estate its attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper.

## COUNT II

## GROSSLY NEGLIGENT/RECKLESS INFLICTION OF EMOTIONAL DISTRESS (by The Estate)

118.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 112 as though fully set forth.  This cause is brought against all Defendants.

119.    Defendants had a duty to refrain from causing an unreasonable risk of harm to Mr. Everett that their actions might cause him either emotional or physical pain or both, and this duty is further buttressed by FCRA which prohibits employment discrimination, and thus the Defendants have a duty not to engage in employment discrimination that is statutory in Florida and Defendants' violation of FCRA constitutes negligence per se alternatively some evidence of negligence. Defendant's causing or allowing Mr. Everett to die while at work in such a manner as to instigate and cause his death, such as by threatening Mr. Everett's job and then taking it away were done willfully, wantonly, and/or maliciously, particularly when it was known by Defendants that Mr. Everett was a superior performer, and when his race and/or marital status were motivating factors for such behavior and when all Defendants knew he was in a weakened state and in a state in which he may in fact die from the level of stress that the Defendants were putting on Mr. Everett.  The Defendants, as described above, created and maintained an EAP for the specific purpose of providing employees and former employees like Mr. Everett and their family members (Everett and

Doe) a mechanism to raise any concerns of physical or mental health and to properly address those concerns, thus voluntarily creating a specific duty on the part of the Defendants in this regard. Defendants Wright never suggested to Mr. Everett that he obtain help through EAP, because they did not want him receiving any mental health assistance.

120.    Defendants' causing or allowing Mr. Everett to be threatened with loss of bonus and raise and to be denied all reasonable accommodation and putting him in the situation where he is going to lose his lower extremities, and blocking him from EAP assistance, etc. to destroy him as a person, caused Mr. Everett to endure severe emotional distress, which emotional distress caused him to die all of which constitutes a breach of the specific duty created by the Defendants with respect to the formation of its EAP, the requirement that Defendant Wright and Defendants refer him there when it was obvious to them they should have (but they did not), and a breach of their duty to avoid the creation of an unreasonable risk of harm to Mr. Everett (Defendants creation of an unreasonable risk of harm to Mr. Everett caused Mr. Everett's death).  As examples of the severe mental and emotional distress that Mr. Everett endured from the breach of Defendants' duty to them,

a.      Mr. Everett experienced depression, withdrawal from society, serious panic attacks, lack of sleep, despondency, and loss of appetite.

b.      Mr. Everett has also suffered gastroenterological issues such as severe stomach disorders, headaches, and physical pain, caused by the emotional stress placed upon him by the Defendants, and was transformed into a violent man who committed murder because of the Defendants' actions.

121.    Defendants' actions constitute the grossly negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as malicious,

willful, and wanton.  While Mr. Everett suffered a physical impact because of the words Defendant Wright spoke to him and the gunshot wound, The Estate need not prove a physical impact because the Defendants' actions were willful and wanton.

122.    Defendants' actions constitute the grossly negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as malicious, willful, and wanton.

123.    In wantonly and willfully subjecting Mr. Everett to emotional distress, Defendant Wright's conduct in committing this tort on Mr. Everett was taken at a time when Wright was not acting in furtherance of the corporate Defendants' business and the tort arose from an act constituting race/marital status discrimination/harassment which is a scenario involving an injury to intangible personal rights.

124.    Defendant Wright's conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendants, that the corporate Defendants knew or should have known of the conduct.  The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent Defendant Wright's conduct, but rather ratified it.  Consequently, the corporate Defendant is vicariously responsible for Defendant Wright's tortious conduct toward Mr. Everett.

WHEREFORE, as to Count II, The Estate respectfully requests that it be awarded compensatory damages, for the pain and suffering that Mr. Everett endured as a result of the intentional and outrageous acts of Defendant, and it seeks pre-judgment and post-judgment interest, and any and all other relief to which it is entitled.

## COUNT III

## WRONGFUL DEATH ACT CLAIM

125.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 112 as though fully set forth.  This Count is brought against all Defendants, and the wrongful death

act count and the survival act count are brought in the alternative with The Estate intending to make an election of remedy after trial but before the issuance of a final judgment as to which claim will be included in the final judgment if The Estate prevails on both.  Here, the death of Mr. Everett was caused by the wrongful act, negligence, default, or breach of contract or warranty of the Defendants as set forth herein, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued.

126.   The Defendants had a duty to refrain from creating an unreasonable risk of harm to Mr. Everett by subjecting him to severe emotional distress and by wrongly, negligently, or by omission causing Mr. Everett's death.  Defendants breached that duty and created an unreasonable risk of harm that Mr. Everett would be subjected to emotional distress that would cause him harm and his death, and those actions were wrongful and grossly negligent because they are inextricably intertwined with intentional race and/or marital status discrimination that is prohibited by statute (FCRA).  As set forth herein, the Defendants caused the death, negligently, of Mr. Everett, and they had a duty to refrain from acting in a manner that would have caused his death, such as by creating and operating an EAP program that Mr. Everett should have been referred to in order to control the physical and mental health issues their employees suffered from, thus giving rise to a specific duty of care toward Mr. Everett and his family members, but which program failed to take control over the mental and physical health of the Mr. Everett knowing he was dying and in serious need for medical assistance to stop the inevitable death Defendants knew would result from their actions and inaction.

127.   It is reasonably foreseeable that constantly threatening Mr. Everett because he was a black man married to a white woman, which caused more and more physical pain, suffering, and stress, while working under extremely adverse conditions that led to a termination and then a

murder-suicide, may cause someone to fall into depression, suffer stress, and increase high blood pressure, of which Defendants were aware was likely to happen, particularly when that person is in the provider role as head of household, would cause severe emotional distress and even death to that person, here Mr. Everett.

128.    The Defendants breached their duty to Mr. Everett and The Estate by saying and doing things to him that Defendants knew or should have known may cause Mr. Everett to die.

129.    Because of the Defendants' negligence, as set forth above in detail, beneficiaries of The Estate have been harmed and have been damaged, and their damages include the loss of companionship and support of Mr. Everett, pain and suffering, economic damages, and attorneys' fees.  Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.

The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.  Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.  The decedent's personal representative (here, Everett) may recover for the decedent's estate the following:

Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value, may also be recovered:  (1) If the decedent's survivors include a surviving spouse or lineal descendants; or (2) if the decedent is not a minor child as defined in s. 768.18(2), there are no lost support and services recoverable under subsection (1), and there is a surviving parent.

WHEREFORE, as to all Count III (which is brought against all Defendants), The Estate and all beneficiaries and survivors including the personal representative respectfully requests that it be awarded (all damages set forth in the Wrongful Death Act) on behalf of various beneficiaries and the personal representative the damages outlined above, and intends to seek punitive damages upon a hearing with the Court, and pre-judgment and post-judgment interest are sought as well as costs.

## COUNT IV

## SURVIVAL ACT CLAIM

130.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 112 as though fully set forth.  This Count is brought against all Defendants, and the wrongful death act count and the survival count are both brought in the alternative with The Estate intending to make an election of remedy after trial but before the issuance of a final judgment as to which claim will be included in the final judgment if The Estate prevails on both.

131.    The Defendants had a duty to refrain from creating an unreasonable risk of harm to Mr. Everett by subjecting him to severe emotional distress and by wrongly, negligently, or by omission causing Mr. Everett's death.  Defendants breached that duty and created an unreasonable risk of harm that Mr. Everett would be subjected to emotional distress that would cause him harm

27

and his death, and those actions were wrongful and grossly negligent because they are inextricably intertwined with intentional race and/or marital status discrimination that is prohibited by statute (FCRA). As set forth herein, the Defendants caused the death, negligently, of Mr. Everett, and they had a duty to refrain from acting in a manner that would have caused his death, such as by creating and operating an EAP program that Mr. Everett should have been referred to in order to control the physical and mental health issues their employees suffered from, thus giving rise to a specific duty of care toward Mr. Everett and his family members, but which program failed to take control over the mental and physical health of the Mr. Everett knowing he was in serious need for medical assistance to stop the inevitable death Defendants knew would result from their actions and inaction. Constantly refusing to allow reasonable accommodation requests, which caused more and more physical pain, suffering, and stress, treating him less than human in their dealings with him in his last few weeks of employment as set forth herein. The Defendants' actions, particularly the actions of Defendant Wright set forth above, do not constitute simple negligence but rather were willful and wanton (gross negligence or recklessness which is wrongful conduct), designed to cause severe emotional distress or even death.

132. It is reasonably foreseeable that constantly threatening Mr. Everett because he was a black man married to a white woman, which caused more and more physical pain, suffering, and stress, while working under extremely adverse conditions that led to a termination and then a murder-suicide, may cause someone to fall into depression, suffer stress, and increase high blood pressure, of which Defendants were aware was likely to happen, particularly when that person is in the provider role as head of household, would cause severe emotional distress and even death to that person, here Mr. Everett.

133.    The Defendants breached their duty to Mr. Everett and The Estate by saying and doing things to him that Defendants knew or should have known may cause Mr. Everett to die.

134.    Because of the Defendants' negligence, as set forth above in detail, beneficiaries of The Estate have been harmed and have been damaged, and their damages include the loss of companionship and support of Mr. Everett, pain and suffering, economic damages, and attorneys' fees, and .

WHEREFORE, as to all Count IV (which is brought against both Defendants), The Estate and the beneficiaries and survivors respectfully requests that it be awarded (all damages allowed for in Survival Act claims) on behalf of various beneficiaries compensatory damages for the pain and suffering the beneficiaries and Mr. Everett endured, economic damages for loss of support and companionship, attorneys' fees, and The Estate intends to seek punitive damages upon a hearing with the Court, and she seeks pre-judgment and post-judgment interest.

## COUNT V

## GROSS NEGLIGENT/RECKLESS INFLICTION OF EMOTIONAL DISTRESS (Doe and Everett)

135.    Doe and Everett re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 112 as though fully set forth.  This cause is brought against all Defendants.

136.    The actions of the Defendants within 4 years of the initial Complaint in this matter being filed (February 2018) are as follows:  Defendants caused or allowed Mr. Everett to be discriminated against because of his race and/or marital status, to be retaliated against because he complained about same, and caused his death through gross negligence (wanton, willful, or malicious), creating and stoking him to go into a murderous and suicidal rage, and Defendants knew that he had Doe and Everett, and that with Doe's volleyball, Mr. Everett was a significant part of her success, were willful and wanton (grossly negligent), acts which should not have been taken

because they created an unreasonable risk of harm to Doe and Everett, because it was reasonable from their actions that Doe and Everett would suffer emotional distress therefrom.

137.    Defendants' recklessly causing the death of Mr. Everett caused Doe and Everett to endure severe emotional distress, immediately upon the events occurring.  Defendants breached their duty to avoid the creation of an unreasonable risk of harm to Doe and Everett, which was foreseeable from Defendants' conduct.

138.    Defendants' causing or allowing Mr. Everett to be threatened with loss of job and then taking it away, and blocking him from EAP assistance, etc. to destroy him as a person, and eventually causing Mr. Everett's death, caused Everett and Doe, severe emotional distress, as well, all of which constitutes a breach of the specific duty created by the Defendants to refrain from creating an unreasonable risk of harm to Doe and Everett, Defendant's breached their duty to provide EAP help to Doe and Everett, because Defendants had a duty to refer the family members to EAP so they could receive mental health assistance.  As examples of the severe mental and emotional distress that the Everetts endured from the breach of Defendants' duty to them,

    a.    Everett and Doe have experienced depression, withdrawal from society, serious panic attacks, lack of sleep, despondency, and loss of appetite,

    b.    Everett and Doe have also suffered gastroenterological issues such as severe stomach disorders, headaches, and physical pain, caused by the emotional stress placed upon them by the Defendants.

139.    The Plaintiffs suffered a physical impact because the traumatizing event which caused the emotional distress was the viewing of Mr. Everett's cadaver and with them learning about the death shortly after it occurred, and thus the impact was visual in nature (they arrived on the scene of a terrorizing and horrific event—the completely unnecessary death of their father and

husband), which impact resulted in severe emotional distress to the Plaintiffs, which manifested itself in physical symptoms, as described above, which occurred shortly after witnessing the traumatizing event and further discussions about the death and the attendant circumstances regarding same were further traumatizing events for Everett and Doe.

140.   Defendants' actions constitute the negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as willful and wanton.

141.   While Doe and Everett suffered a physical impact as set forth above, they need not prove a physical impact because the Defendants' actions were willful and wanton and because their actual claim is solely for mental or nervous injury that arises out of fright and excitement only.

142.   Defendants' actions constitute the negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as willful, and wanton.

143.   In wantonly and willfully subjecting Doe and Everett to emotional distress, Defendant Wright's conduct in committing this tort on Doe and Everett was taken at a time when Wright were acting in a manner that makes the corporate Defendant vicariously liable.

144.   Defendant Wright's conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendant, that the corporate Defendants knew or should have known of the conduct.  The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent Defendant Wright's conduct.  Consequently, the corporate Defendants are vicariously responsible for Defendant Wright's tortious conduct toward Doe and Everett.

WHEREFORE, as to Count V, Doe and Everett respectfully request that he be awarded compensatory damages, for the pain and suffering that she endured as a result of the willful and wanton acts of Defendants, and they seek pre-judgment and post-judgment interest.

## COUNT VI

### OUTRAGE (All Defendants)

145.    Doe and Everett re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 112 above as though fully set forth.  This claim is brought by Doe and Everett against all Defendants.

146.    The actions of the Defendants within 4 years of the Complaint in this being filed are as follows:  Defendants' causing or allowing Mr. Everett to be discriminated against because of his race and/or marital status, fabricating false reasons for his termination, allowing him to work in a work place in which he was bullied and demeaned, retaliating against him, and doing all of this to the point where it became clear that he placed in a murderous and suicidal rage, when he was in a weakened state was the subjection to the Plaintiffs of the intentional or reckless infliction of severe emotional distress, caused by actions that were outrageous and went beyond all bounds of decency in a civilized society.

147.    The Defendants' actions were outrageous acts, acts which were intentional or reckless, acts which should not have been taken because they caused severe emotional distress in Plaintiffs.

148.    Defendants' causing or allowing Mr. Everett to be discriminated against because of his race and/or marital status and to be retaliated against because he complained about same, and the bullying and demeaning of Mr. Everett, which was so severe that it led to traumatic events for Mr. Everett which in turn caused Doe and Everett to endure severe emotional distress, immediately upon the events occurring.  Defendants intended to or recklessly caused the creation of an unreasonable risk of harm to Mr. Everett and in turn the Plaintiffs, which was foreseeable from Defendants' conduct.

149.     Defendants' actions were intentional and constitute the intentional or reckless infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous and caused significant damages to Plaintiffs.

150.     Defendant agents' conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendants, that the corporate Defendants knew or should have known of the conduct.  The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent their agents' conduct.  Consequently, the corporate Defendants are vicariously responsible for their agents' subjection of Mr. Everett and in turn the Plaintiffs to outrageous conduct.

151.     As a direct and proximate result of Defendants' subjection of Plaintiffs to outrageous behavior, and the corporate Defendants' failure to take appropriate corrective action to correct, remedy, or prevent such outrageous behavior, Plaintiffs have suffered damages.  Plaintiffs' damages include, but are not limited to, lost income, emotional distress, mental anguish, and humiliation.

WHEREFORE, as to all Count VI, Plaintiffs respectfully request that they be awarded compensatory damages, for the pain and suffering that they endured as a result of the intentional and outrageous acts of Defendants' agents, and intends to seek punitive damages upon a hearing with the Court, and they seek pre-judgment and post-judgment interest, and any other damages that the law allows for this tort.

## DEMAND FOR TRIAL BY JURY

The Estate, Everett, and Doe demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: <u>February 7, 2022</u>

Respectfully submitted,

By: <u>/s/ *Chris Kleppin*</u>
    Chris Kleppin
    Fla. Bar No. 625485
    ckleppin@gkemploymentlaw.com
    The Kleppin Firm, P.A.
    *Attorneys for Plaintiffs*
    8751 W. Broward Boulevard
    Suite 105
    Plantation, FL 33324
    Tel: (954) 424-1933
    Fax: (954) 474-7405
Secondary E-Mails: assistant@gkemploymentlaw.com